UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
LESLIE GAMBARDELLA,                        :
                          Plaintiff,      :
                                       :
v.                                          :      **OPINION AND ORDER**
                                       :
TRICAM INDUSTRIES, INC., and HOME          :      18 CV 10867 (VB)
DEPOT U.S.A., INC.,                         :
                       Defendants.   :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Leslie Gambardella brings this action against defendants Tricam Industries, Inc. ("Tricam"), and Home Depot U.S.A., Inc. ("Home Depot"), alleging claims for design and manufacturing defects, failure to warn, and breach of warranty.

Before the Court is defendants' motion to preclude the testimony of plaintiff's expert witness and for summary judgment.  (Doc. #30).

For the reasons set forth below, the motion to preclude is GRANTED IN PART and DENIED IN PART, and the motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

**BACKGROUND**

The parties have submitted briefs, statements of material facts, supporting affidavits, declarations, and exhibits, which together reflect the following factual background.

On February 15, 2017, plaintiff was standing on a model AS-3 Type II stepstool ("AS-3 stepstool" or the "stepstool"), manufactured by Tricam, to reach into a closet in her home, when she heard a "snapping sound" and fell from the stepstool.  (Doc. #34 ("Pollack Decl.") Ex. H

1

("Gambardella Tr.") at 33–34).[1]  She had been standing on the stepstool for between seven and

ten seconds before her fall, during which time the stepstool did not wiggle, wobble, or feel

unstable.  As a result of the fall, plaintiff fractured her right foot and ankle.

      Plaintiff purchased the stepstool at Home Depot two-and-a-half to three years prior to

February 15, 2017.  She did not discuss the stepstool with any Home Depot employee before

purchasing it.  After purchasing the stepstool, plaintiff kept it in a closet and used it as needed.

      Plaintiff estimates she climbed the stepstool about thirty times per year.  When she did

so, she placed it on the same surface as the surface the stepstool was placed on the day of the

accident.  When plaintiff previously used the stepstool, it did not wiggle or wobble, and she did

not note any other instability in the stepstool.  In addition, her maid used the stepstool on

occasion.  Plaintiff had last used the stepstool a few weeks prior to the accident.

      Prior to falling off the stepstool, plaintiff did not read any warnings or instructions on the

stepstool.  Nor did plaintiff inspect the stepstool to see it if was damaged.  However, after the

fall, plaintiff saw that the right back leg of the stepstool was bent inwards.  Plaintiff does not

know what caused the stepstool leg to bend.

## DISCUSSION

I.     <u>Standard of Review</u>

      The Court must grant a motion for summary judgment if the pleadings, discovery

materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

---

[1]     Citations to "Gambardella Tr. at _" refer to the page number on the top right-hand corner of each transcript page.

A fact is material when it "might affect the outcome of the suit under the governing law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[2]

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 322–23.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for him.  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a

---

[2]      Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).  Accordingly, bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.     Plaintiff's Expert Witness

Defendants argue the Court should preclude plaintiff's expert, Dr. William Marletta, from testifying.

The Court agrees that some, but not all, of Dr. Marletta's testimony should be precluded.

A.     Legal Standard

Rule 702 of the Federal Rules of Evidence provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's testimony (i) is based on sufficient facts or data; (ii) is the product of reliable principles and methods; and (iii) has reliably applied the principles and methods to the facts of the case.  See Fed. R. Evid. 702.

Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993), trial courts serve as gatekeepers for expert testimony.  Trial courts may decide whether expert testimony is admissible in ruling on a motion for summary judgment.  Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).  "Rule 702 requires a trial court to make an initial determination as to whether the proposed witness qualifies as an expert.  If this threshold requirement is met, then a

court must inquire into whether the scientific, technical or other specialized testimony provided by that expert is both relevant and reliable." Baker v. Urban Outfitters, Inc., 254 F. Supp. 2d 346, 352–53 (S.D.N.Y. 2003). The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. Id. at 353.

The Supreme Court has articulated four factors pertinent to determining the reliability of an expert's reasoning or methodology: (1) whether the theory or technique relied on has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 593–94. However, these factors do not constitute a "definitive checklist or test." Id. at 953. Rather, a court should apply these factors flexibly. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999).

Moreover, "in analyzing the admissibility of expert evidence, the district court has broad discretion in determining what method is appropriate for evaluating reliability under the circumstances of each case." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002). This includes the "discretion under Federal Rule of Evidence 703 to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." Id. at 267. "Only the methodology, not the district court's belief as to the correctness

of such conclusions, is the focus of a <u>Daubert</u> inquiry."  <u>See</u> <u>Schoolcraft v. City of New York</u>, 2015 WL 6444620, at *2 (S.D.N.Y. Oct. 23, 2015).

"[N]othing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the <u>ipse</u> <u>dixit</u> of the expert." <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997).  Indeed, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  <u>Id</u>.  An expert must give "some explanation of the data, studies, or reasoning" used.  <u>See</u> <u>Donnelly v. Ford Motor Co.</u>, 80 F. Supp. 2d 45, 50 (E.D.N.Y. 1999).  "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, <u>Daubert</u> and Rule 702 mandate the exclusion of that unreliable opinion testimony."  <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, 303 F.3d at 266.  Simply, a court should exclude expert testimony where it is "speculative or conjectural, or if it is based on assumptions that are . . . in essence an apples and oranges comparison."  <u>Boucher v. U.S. Suzuki Motor Corp.</u>, 73 F.3d at 21.

B.    <u>Dr. Marletta's Qualifications</u>

Defendants argue Dr. Marletta lacks the specialized knowledge, training, or expertise to opine in this case because he is not an engineer, he has never designed or manufactured a ladder or stepstool, has never worked for a ladder or stepstool manufacturer or designer, and he has not published a scholarly article on ladder or stepstool design, manufacture, defect or causation.

The Court disagrees.

An expert should not be barred "from testifying merely because he or she lacks a degree or training narrowly matching the point of dispute in the lawsuit."  <u>Green v. McAllister Bros., Inc.</u>, 2005 WL 742624, at * 17 (S.D.N.Y. Mar. 25, 2005).  Although it is true Dr. Marletta is not an engineer, he does hold a Ph.D. and master's degree in Occupational Health and Safety from

New York University.  Moreover, Dr. Marletta was a member of the American Society of Safety Engineers and worked as an engineering inspector early in his career.  Since 1985, Dr. Marletta has performed accident reconstruction and provided safety consulting services to commercial and construction industries relating to, among other things, ladders.

Accordingly, defendants' arguments respecting Dr. Marletta's academic training, and his other alleged professional shortcomings, would be more properly explored on "cross-examination and [go] to his testimony's weight and credibility—not its admissibility."  See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995).

Nevertheless, the fact that Dr. Marletta qualifies as an expert does not end the Court's inquiry into whether his testimony should be precluded.

C.      Reliability of Dr. Marletta's Expert Report

Defendants argue Dr. Marletta's testimony respecting his expert report must be precluded because he did not scientifically validate his theories.

The Court agrees as to Dr. Marletta's third, fourth, fifth, and seventh conclusions, but disagrees as to the other conclusions.[3]

_____

[3]      The Court will not consider Dr. Marletta's September 24, 2019, affirmation (Doc. #36 ("Nichols Decl.") Ex. 1 ("Marletta Aff.")), submitted in opposition to the pending motion.  This affirmation rehashes the opinions in his original report, rebuts arguments presented in the defendants' memorandum of law in support of the pending motion, and provides additional details about his methodology.  However, plaintiff may not circumvent the expert discovery deadlines by presenting an untimely expert report in the form of an affirmation in opposition to a summary judgment motion.  See Fed. R. Civ. P 26(a)(2)(D)(ii) ("evidence [] intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)" is due "within 30 days after the other party's disclosure"); see also Fed R. Civ. P. 37(c)(1) ("If a party fails to provide information . . .  as required by Rule 26(a) or (e), the party is not allowed to use that information . . .  to supply evidence on a motion, at a hearing, or at a trial.").

1.    <u>Admissible Conclusions</u>

As an initial matter, the Court notes Dr. Marletta fails to identify explicitly what principles and methods he relied upon in coming to his conclusions.  However, Dr. Marletta's report suggests he reviewed plaintiff's responses to interrogatories and a webpage on the Tricam website describing the AS-3 stepstool.  (<u>See</u> Pollack Decl. Ex. J ("Marletta Report") at ECF 5–6).[4]  Dr. Marletta states that on June 7, 2019, he performed an inspection of the stepstool from which plaintiff fell and includes details of his observations and measurements of the stepstool.  (<u>Id</u>. at ECF 7).  Accordingly, the Court concludes that in reaching the conclusions in his report, Dr. Marletta relied on his review of plaintiff's responses to interrogatories, the Tricam AS-3 stepstool product webpage, and his June 7 inspection.

Dr. Marletta's first, second, and sixth opinions—that "there is no sign of abuse of the step ladder in question and no evidence of improper handling or storage provided by physical exam of damage prior to the occurrence," that "this ladder failed under reasonable and intended use for which it was designed," and that "the stress marks or discoloration on the rails is related to the stress and failure of the metal along the rail"—are admissible because they rely on his review of plaintiff's interrogatories, the product webpage, and his June 7, 2019, inspection.  ("Marletta Report" at ECF 12).

To the extent defendants take issue with Dr. Marletta's reliance on visual examination, that he did not provide an error rate, and he did not subject his theories to peer review or scrutiny, such arguments ultimately "go to the weight, not the admissibility, of [Dr. Marletta's] testimony and are fodder for cross-examination, not exclusion."  <u>In re Gen. Motors LLC Ignition Switch Litig.</u>, 2017 WL 2664199, at *2 (S.D.N.Y. June 20, 2017).

---

[4]    "ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

2.      Inadmissible Conclusions

However, Dr. Marletta's third conclusion—"this incident qualifies as 'res ipsa loquitur'[;]
the mere fact that the step ladder failed during customary use is evidence of negligent design
manufacture, or construction"—is an inadmissible legal conclusion.  (Marletta Report at ECF
12); see United States v. Articles of Banned Hazardous Substances Consisting of an
Undetermined No. of Cans of Rainbow Foam Paint, 34 F.3d 91, 96 (2d Cir. 1994) ("It is a well-
established rule in this Circuit that experts are not permitted to present testimony in the form of
legal conclusions.").

In addition, plaintiff has not shown by a preponderance of the evidence that Dr.
Marletta's fourth and fifth conclusions are grounded on sufficient facts or data and that they are
the product of reliable principles and methods.  The fourth and fifth conclusions state:

- "[T]he defective nature of the manufacturing process causing complete ladder failure has
  been previously identified with at least one other accident."

- "[I]n this specific case it is clear that the mode of failure where the Phillips head screw
  did not provide enough surface area to distribute the force adequately having pulled
  through the sheet metal, is quite similar to the prior case above described.  The load
  should have been better distributed with a washer or larger fastener to prevent punching
  through the rail."

(Marletta Report at ECF 12).  These two conclusions rely on an expert opinion provided in
Ensley v. Costco Wholesale Corp., 407 P.3d 373 (Wash. App. Dec. 26, 2017) ("Ensley"),
regarding a fall from a Rubbermaid TR-3HB stepstool (the "TR-3HB stepstool"), a model also
designed and manufactured by defendant Tricam.  In conclusory fashion, Dr. Marletta assumes
Tricam used a defective process in manufacturing the AS-3 stepstool because the expert in

Ensley concluded the TR-3HB stepstool had a "design flaw" that "could [have] be[en] mitigated if the manufacturing process included a requirement for grinding down and smoothing the holes punched in the railing, a process known as deburring."  (Marletta Report at ECF 10).  However, to draw his conclusions by relying on another expert's opinion in a different lawsuit pertaining to a different product by the same manufacturer, Dr. Marletta makes several improper assumptions and fails to provide sufficient data and facts upon which to base these two conclusions.

First, the TR-3HB stepstool is made of steel whereas the AS-3 stepstool is made of aluminum.  The two stepstools also have different dimensions.  Dr. Marletta offers no explanation of how steel and aluminum stepstools are similar, in manufacturing process or design, and if deburring has the same mitigation effect on aluminum as it does on steel, especially when used on stepstools of different dimensions.  Moreover, Dr. Marletta does not state whether he examined the TR-3HB stepstool or otherwise tested his conclusions based on the TR-3HB stepstool.

Second, Dr. Marletta nowhere identifies the design flaw in the AS-3 stepstool.  He does quote the Ensley expert report, which states that with respect to the TR-3HB stepstool, "[p]unching holes in the tubular railings was 'a design flaw.'"  (Marletta Report at ECF 10).  Dr. Marletta then states the hole in the leg of the AS-3 stepstool "showed the same types of physical defects," suggesting, but not explicitly stating, that the hole in the leg of the AS-3 stepstool was a design flaw.  (Id.).  He also provides no explication of why such hole is a design flaw in the AS-3 stepstool.

Indeed, Dr. Marletta confusingly also suggests the design defect involved a screw, not the hole.  He states, "in this specific case it is clear that the mode of failure where the Phillips head screw did not provide enough surface area to distribute the force adequately having pulled

through the sheet metal." (Marletta Report at ECF 11). To the extent this is the purported design flaw, again, Dr. Marletta provides no explanation of what data and facts he relied on, or what methods and principles he applied.

Third, the only connection Dr. Marletta makes between the two stepstools is that the TR-3HB stepstool "leg broke where a hole had been punched so that a rivet could be inserted to attach a step," and plaintiff's stepstool "failed where a hole had been punched so that a rivet could be inserted to attach a rung," indicating the stepstools in both cases had the "same types of physical defects." (Marletta Report at ECF 10).[5] Thus, Dr. Marletta concludes, the Ensley expert's "opinion that this stress could have been mitigated had the manufacturing process included a requirement for deburring applies to [plaintiff's] incident." (Id.).

However, that the two stepstools have similar "physical defects," without more, is insufficient data on which to conclude deburring in this case would have mitigated the purported design flaw in plaintiff's stepstool. Dr. Marletta has not supported his conclusion by showing the effects of deburring on the AS-3 stepstool. Given the above referenced disparities between the stepstools, "there is simply too great an analytical gap between the data and the opinion proffered." See Gen. Elec. Co. v. Joiner, 522 U.S. at 146.

Finally, to the extent Dr. Marletta suggests use of a washer or larger fastener would have made the stepstool safer, Dr. Marletta provides no basis for his assumption that the Phillips head screw did not provide enough surface area to distribute the force adequately. Nor does he provide any data or facts for his conclusion that use of a washer or a larger fastener would have prevented "punching through" the rail. See Lynch v. Trek Bicycle Corp., 374 F. App'x 204,

---

[5]    Although Dr. Marletta relies on photographs to draw this comparison, neither party has furnished the Court with clear copies of the photographs.

206–07 (2d Cir. 2010) (summary order) (affirming exclusion of expert testimony that was speculative).

In short, Dr. Marletta's conclusions regarding the purported design and manufacturing flaws, how stress on plaintiff's stepstool could have been mitigated, and the use of a washer or larger fastener are not based on sufficient facts or data as required by Rule 702, and thus are inappropriate for submission to a jury. See Boucher v. U.S. Suzuki Motor Corp., 73 F.3d at 22 (holding district court abused discretion in admitting expert testimony not "accompanied by a sufficient factual foundation").

In addition, Dr. Marletta may not testify as to his seventh conclusion—"the items listed above [referring to the other six conclusions discussed above] are the significant [causal] factors of this accident"—because Dr. Marletta provides no detail about what principles and methods he applied to arrive at this conclusion, such as whether he conducted any testing. See Lynch v. Trek Bicycle Corp., 374 F. App'x at 206–07 (affirming exclusion of expert testimony for failing to test causation theory); cf. Rupolo v. Oshkosh Truck Corp., 749 F. Supp. 2d 31, 40 (E.D.N.Y. 2010) (allowing expert testimony regarding causation of fall from ladder given expert conducted two inspections, consulted safety regulations, made relevant measurements, and conducted an accident reconstruction).

Accordingly, Dr. Marletta may testify as to whether plaintiff's stepstool showed any signs of abuse, whether the stepstool failed under the reasonable and intended use for which it was designed, and whether the stress marks or discoloration on the rails are related to the stress and failure of the metal along the rail. However, he may not testify regarding any purported design or manufacturing defect, the potential use of a washer or larger fastener to prevent the screw from punching through the rail of plaintiff's stepstool, or his conclusion respecting the

significant causal factors of this accident.  Dr. Marletta also may not testify regarding new

information included in his September 24, 2019, affirmation.

III.    <u>Products Liability Claims</u>

     Defendants argue there is no genuine dispute of material fact respecting plaintiff's

product liability claims, and thus, defendants are entitled to summary judgment.

     The Court disagrees as to plaintiff's claim for a manufacturing defect and for breach of

implied warranty but agrees as to plaintiff's other claims.

     Under New York law, a manufacturer or other entity in the line of distribution "can be

liable for injury caused by the manufacturer's product under theories of negligence, breach of

express or implied warranty, and strict liability in tort."  <u>Macaluso v. Herman Miller, Inc.</u>, 2005

WL 563169, at * 4 (S.D.N.Y. March 10, 2005).

     A.    <u>Legal Standard for Negligence and Strict Liability</u>

     To make out a <u>prima</u> <u>facie</u> negligence case in New York, a plaintiff must show:  (i) the

defendant owed the plaintiff a duty to exercise reasonable care; (ii) a breach of that duty by

failure to use reasonable care so that a product is rendered defective; (iii) the defect was the

proximate cause of the plaintiff's injury; and (iv) damages.  <u>Colon ex rel. Molina v. BIC USA,</u>

<u>Inc.</u>, 199 F. Supp. 2d 53, 82 (S.D.N.Y. 2001).  For strict liability, a plaintiff must show a

defective product caused plaintiff's injury.  <u>Id</u>.  "A product is defective for the purposes of a

negligence or strict products liability claim if it is not reasonably safe."  <u>Macaluso v. Herman</u>

<u>Miller, Inc.</u>, 2005 WL 563169, at *5.

     A plaintiff may allege a product was defective based on a design defect, a defect as a

result of a manufacturing flaw, or a failure to warn.  <u>Colon ex rel. Molina v. BIC USA, Inc.</u>, 199

F. Supp. 2d at 82–83.

In a claim for design defect, the plaintiff must prove:  (i) although the product was manufactured according to its intended design, the design itself devised a product that was not reasonably safe, and (ii) there was a feasible alternative design for the product that would have been safer and that would have prevented the plaintiff's injury.  See Macaluso v. Herman Miller, 2005 WL 563169, at *5.

In a claim for manufacturing defect, "the plaintiff must prove that the product failed to perform in the intended manner due to a flaw in the manufacturing process."  Macaluso v. Herman Miller, Inc., 2005 WL 563169, at *5.  "In other words, a manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units."  Colon ex rel. Molina v. BIC USA Inc., 199 F. Supp. 2d at 85.

Finally, in a claim for failure-to-warn, a plaintiff "may assert that a product is defective because the manufacturer failed to provide adequate warnings regarding the risks and dangers associated with the use, or foreseeable misuse, of its product."  Lara v. Delta Int'l Mach. Corp., 174 F. Supp. 3d 719, 741 (E.D.N.Y. 2016).   Although "[t]he sufficiency of a warning is generally a question of fact to be determined at trial . . .  a plaintiff has the burden of proving that the absence of an adequate warning proximately caused his injury."  Id. at 742.

B.      Negligence and Strict Liability Claims

With respect to the manufacturing defect claim, plaintiff has raised a genuine issue of material fact as to whether the stepstool had a manufacturing defect such that her stepstool was defective relative to other AS-3 stepstools.  Although plaintiff fails to adduce "direct proof of a defect in the ladder," plaintiff's own account of the accident provides "circumstantial evidence that the product did not perform as intended."  Putnick v. H.M.C. Assocs., 137 A.D.2d 179, 183 (3d Dep't 1988) ("[P]laintiff's testimony that he heard the ladder crack permits the inference that

the ladder did not perform as intended.").  And although defendants offer an alternative basis for the accident—that plaintiff lost her balance and fell—a reasonable factfinder could credit plaintiff's testimony that she previously used the stepstool without issue and she was standing on it the day of the accident for several seconds before hearing a snapping sound.  This could "permit the jury to infer that the product was defective and did not perform as intended, without the need of a plaintiff's expert." Lynch v. Trek Bicycle Corp., 2011 WL 1327032, at *4 (S.D.N.Y. Mar. 30, 2011).

However, absent Dr. Marletta's precluded testimony, plaintiff has presented "no testimony or any evidence to demonstrate an inherent defect in the ladder's design or that it was feasible to design [the ladder] in a safer manner." See Putnick v. H.M.C. Assocs., 137 A.D.2d at 184.  And although "[s]uch a claim may be established by circumstantial evidence that the product did not perform as intended and by excluding all causes of the accident not attributable to the defendant," plaintiff has not excluded other causes for the fall.  Arnold v. Krause, Inc., 233 F.R.D. 126, 131 (W.D.N.Y. 2005).

Plaintiff also fails to adduce evidence that defendants failed to warn against dangers resulting from foreseeable uses about which it knew or should have known.  Plaintiff offers no evidence that the stepstool's warnings and instructions were inadequate or that different warnings or instructions would have prevented plaintiff's fall.  Indeed, plaintiff testified she did not read the warnings and instructions on the stepstool before the accident.  Cf. Putnick v. H.M.C. Assoc., 137 A.D.2d at 184 (dismissing failure-to-warn claim because plaintiffs "offered nothing to demonstrate that the warnings provided were inadequate").

In sum, because plaintiff fails to present evidence to make out a <u>prima</u> <u>facie</u> case as to the design defect and failure-to-warn claims, such claims fail as a matter of law and summary judgment is appropriate.  Plaintiff's manufacturing defect claim, however, may proceed.

C.     <u>Legal Standard Breach of Warranty Claims</u>

"A product is defective for the purposes of breach of an implied warranty claim if it is not fit for the ordinary purposes for which such goods are used when the product leaves the hands of the manufacturer."  <u>Macaluso v. Herman Miller, Inc.</u>, 2005 WL 563169, at *5.  This inquiry "focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners."  <u>Denny v. Ford Motor Co.</u>, 87 N.Y.2d 248, 258–59 (1995).

Although there is a "a high degree of overlap between the substantive aspects" of a breach of implied warranty claim and a strict products liability claim, "it is possible to be liable for breach of implied warranty even though a claim of strict products liability has not been satisfactorily established."  <u>Denny v. Ford Motor Co.</u>, 87 N.Y.2d at 251, 256.

To state a claim for breach of express warranty under New York law, "a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."  <u>Goldemberg v. Johnson & Johnson Consumer Cos.</u>, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014).

D.     <u>Breach of Warranty Claims</u>

As to the claim for breach of an implied warranty, there is a genuine issue of material fact as to whether plaintiff's stepstool was fit for its ordinary purpose.  Plaintiff testified the stepstool collapsed when she was using it in its intended manner.  As explained above, a reasonable

16

factfinder could infer the stepstool was not fit for its ordinary purpose because plaintiff testified she was using the product in "the customary, usual and reasonably foreseeable" manner when it collapsed.  Denny v. Ford Motor Co., 87 N.Y.2d at 258–59.

As to the express warranty claim, however, plaintiff fails to adduce any evidence of an express warranty, much less violation of any such warranty.  Indeed, plaintiff testified she did not discuss the stepstool with any Home Depot employee before purchasing it.  Nor does plaintiff point to any express warranty associated with the stepstool that she relied on in purchasing the stepstool.

Accordingly, because plaintiff fails to present evidence to make out a prima facie case as to the express warranty claim, such claim fails as a matter of law and summary judgment is appropriate.  Plaintiff's breach of implied warranty claim, however, may proceed.

## CONCLUSION

The motion to preclude is GRANTED IN PART and DENIED IN PART, and the motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The next conference in this matter is scheduled for October 26, 2020, at 10:30 a.m., at which time the parties shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, and what efforts they have made or will make to settle this case.  In light of the current public health crisis, the conference will be conducted by telephone conference.   Counsel shall attend the conference by calling the following number and entering the access code when requested:

**Dial-In Number: (888) 363-4749 or (215) 446-3662**

**Access Code: 1703567**

The Clerk is instructed to terminate the motion.  (Doc. #30).

Dated: September 15, 2020
       White Plains, NY

                         SO ORDERED:


                         Vincent L. Briccetti
                         United States District Judge